**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-01139-CMA-NYW

ADEMA TECHNOLOGIES, INC.,
d/b/a GLORIA SOLAR (USA),

      Plaintiff,

v.

PATRINA EIFFERT, and
IMAGINIT, INC.,

      Defendants.

---

**ORDER REGARDING PLAINTIFF'S ALTER EGO CLAIMS AND
MOTION FOR SUMMARY JUDGMENT**

---

Because the facts presented by Plaintiff are insufficient to raise a genuine issue

of material fact that SolarFrame Works ("SFW") is the alter ego of Imaginit Inc.

("ImaginIt") or that ImaginIt or SFW is the alter ego of Dr. Patrina Eiffert, Plaintiff's alter

ego claims are dismissed.  (Doc. ## 110; 115.)  However, the Court determines that

genuine issues of material fact preclude the Court from granting Plaintiff's Motion for

Summary Judgment.  (Doc. # 75.)

## I.    <u>BACKGROUND</u>

On October 22, 2010, SFW issued two price quotations to Plaintiff for materials

related to solar panel mounting systems.  (Doc. # 75 at 2.)  Adema's Vice President of

Sales, Jerry Shinn, signed the price quotations.  (Doc. # 75-3 at 2.)  Although the price

quotations required a deposit of $691,998.97, Adema paid SFW a deposit in the amount of $360,566.40 on October 26, 2010.  (Doc. # 75-2.)  The price quotations indicated that the "[d]eposit is not-refundable."  (*Id.*)  In January 2011, Plaintiff cancelled the purchase orders.[1]  (Doc. ## 75 at 3; 102 at 9.)  Thereafter, Adema and SFW unsuccessfully attempted to find other projects to which the parties could apply the $360,566.40 deposit.   (Doc. # 75-2 at 5, ¶¶ 26, 28.)

On April 29, 2013, Plaintiff brought suit against Patrina Eiffert, Ph.D. ("Dr. Eiffert") and ImaginIt to recover the $360,566.40 deposit it paid to ImaginIt doing business as SFW, which is not a party to this case.[2]  At the time Plaintiff paid the deposit, Dr. Eiffert was the Chief Executive Officer of SFW and ImaginIt was the sole owner of SFW.  (Doc. # 1 at 1.)  On December 1, 2015, Plaintiff filed a motion for summary judgment.  (Doc. # 75.)  On April 29, 2015, Defendants filed a Response, to which Plaintiff replied on May 6, 2015.  (Doc. ## 102; 108.)  Because neither party addressed the issue of alter ego via a summary judgment motion, the Court ordered the parties to file simultaneous

---

[1] Plaintiff claims it no longer required the materials because the third-party company that Plaintiff ordered the materials for "was having difficulty obtaining final permission to install the rooftop solar system at the project site, and that it appeared that the potential lessor had backed out of the arrangement with [the third-party company]."  (Doc. # 75-2 at 4, ¶ 24.)  Defendant asserts Plaintiff cancelled the Purchase Order because it "failed to obtain an executed lease agreement to allow construction of the solar panel generation facilities on the Building rooftops."  (Doc. # 102 at 9.)

[2] On March 19, 2012, Plaintiff filed an action against SFW in the U.S. District Court for the District of California, San Jose Division to recover the deposit.  (Doc. # 110-1, Ex. E.)  On November 20, 2012, SFW filed a Chapter 7 Petition for Bankruptcy in the U.S. Bankruptcy Court for the District of Colorado, which stayed Plaintiff's suit against SFW.  (Doc. # 115-2, Ex. L.)  On February 23, 2015, Plaintiff and SFW entered into a settlement agreement whereby Plaintiff will receive a distribution from SFW's bankruptcy estate.  (Doc. # 110-1, Ex. G.)  The settlement agreement does not "in any manner serve to liquidate or eliminate any of the claims or defenses" asserted in this case, "except as a dollar-for-dollar offset of the sum actually received by Adema . . . against any damages awarded to Adema" in this case.  (*Id.*)

briefing on the issue of whether it is appropriate for the Court to pierce the corporate veil

in this case, i.e., whether SFW is an alter ego of ImaginIt and whether ImaginIt is an

alter ego of Dr. Eiffert.  (Doc. # 109.)  On June 6, 2015, each party filed a brief regarding

alter ego.  (Doc. ## 110, 115.)

## II.   STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to the proper

disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs., Inc.*,

259 F.3d 1226, 1231–32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such

that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v.*

*Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing motions for

summary judgment, a court must view the evidence in the light most favorable to the

non-moving party.  *Id.*  However, conclusory statements based merely on conjecture,

speculation, or subjective belief do not constitute competent summary judgment

evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a

genuine dispute of material fact and entitlement to judgment as a matter of law.  *Id.*  In

attempting to meet this standard, a movant who does not bear the ultimate burden of

persuasion at trial does not need to disprove the other party's claim; rather, the movant

need simply point out to the Court a lack of evidence for the other party on an essential

element of that party's claim.  *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Id.*  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.*

### III.  ANALYSIS

**A.  ALTER EGO**

Plaintiff contends that the Court should find that it is appropriate to pierce the corporate veil of SFW such that it may reach the assets of its corporate parent ImaginIt and Dr. Eiffert.  Naturally, Defendants disagree.

Whether the corporate veil should be pierced must be determined pursuant to Colorado law.  *Boughton v. Cotter Corp.*, 65 F.3d 823, 835 (10th Cir. 1995).  To determine whether piercing the corporate veil is appropriate, the Court must determine: (1) whether the corporate entity is the alter ego of the person or entity in issue; (2) whether justice requires recognizing the substance of the relationship between the person or entity sought to be held liable and the corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim"; and

(3) whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder or other insider personally liable for the acts of the business entity.  *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006).  All three prongs of the analysis must be satisfied.

The corporate veil may be pierced if not doing so would defeat public convenience, justify wrong, or protect fraud.  *Great Neck Plaza, L.P. v. Le Peep Restaurants*, LLC, 37 P.3d 485, 490 (Colo. App. 2001) (citation omitted).  In determining whether to disregard the corporate entity, the court may consider the following factors:

> (1) The parent corporation owns all or majority of the capital stock of the subsidiary.  (2) The parent and subsidiary corporations have common directors or officers.  (3) The parent corporation finances the subsidiary.  (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.  (5) The subsidiary has grossly inadequate capital.  (6) The parent corporation pays the salaries or expenses or losses of the subsidiary.  (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.  (8) In the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division.  (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation.  (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Id.* (citing *Skidmore, Owings & Merrill v. Canada Life Assurance Co.*, 907 F.2d 1026, 1027 (10th Cir. 1990)).  In applying the ten criteria, the Court does not "determine the winner by a numerical score, as in a ball game."  *Boughton*, 65 F.3d at 838 (applying Colorado law).  Instead, the Court views all the factors and even if a majority favor the party seeking to pierce the corporate veil, the corporate entity is not disregarded unless

the corporate form was used to defeat public convenience or protect wrong, fraud, or

crime. *Id.* (internal quotation marks omitted).

1.      **Whether SFW is an alter ego of ImaginIt**

In this case, Plaintiff argues that the following facts establish that SFW is an alter

ego of ImaginIt.  First, Plaintiff asserts that ImaginIt and SFW were operated as one

entity because: (1) SFW was incorporated with ImaginIt as its sole owner; (2) SFW

operated out of the office and manufacturing space ("SFW's Office") leased by and

listed under the name of ImaginIt; (3) ImaginIt used SFW's Office address as its own

business address; (4) ImaginIt and SFW did not have a separate lease agreement for

use of SFW's Office; (5) ImaginIt supplied office furniture and other assets for SFW's

use; and (6) ImaginIt and SFW shared a bookkeeper.  Additionally, there was no license

agreement between ImaginIt and SFW for SFW's use of ImaginIt's patents. ImaginIt

owned 100% of the equity interest in SFW; and SFW also filed taxes under ImaginIt's

name.  Lastly, SFW was "grossly undercapitalized" and, thus, ImaginIt financed SFW

with "influxes of capital" and lines of credit.

Reviewing these facts in the light most favorable to Plaintiff, the Court finds that

the facts are insufficient to raise a genuine issue of material fact as to whether SFW is

the alter ego of ImaginIt.  The fact that ImaginIt owns all the stock of SFW, standing

alone, is an insufficient basis to depart from the general rule that the corporation and its

shareholders are to be treated as distinct legal persons. *Lowell Staats Min. Co. v.

Pioneer Uravan, Inc.*, 878 F.2d 1259, 1263 (10th Cir. 1989) (applying Colorado law).

The fact that SFW and ImaginIt shared some common officers and directors is

insufficient to allow corporate veil piercing.  *Id.* (applying Kansas law).  The fact that

ImaginIt sent financial advances to SFW for the purpose of assisting SFW in meeting its

financial obligations—and not for the purpose of perpetrating a fraud—is insufficient to

expose ImaginIt to liability under the alter ego theory.  *Id.* (applying Colorado law).

Indeed, SFW made payments to ImaginIt on its long-term loan provided to it by ImaginIt;

and paid monthly rent, utilities, insurance, and related expenses of the shared office

space.  Additionally, the commingling of assets, alone, is an insufficient basis to impose

liability on ImaginIt under the theory of alter ego.  *Id.* (applying Colorado law).  SFW and

ImaginIt had separate purposes, had their own customers and suppliers, observed

separate and distinct corporate formalities, and held themselves out to the public as

separate legal entities.  Additionally, because Plaintiff has failed to prove any dominion

or control by ImaginIt over SFW, the fact of consolidated financial reports is insufficient

to impose liability under the alter ego doctrine.  *Id.* at 1264 (citing Texas law).  Indeed,

"[t]he Internal Revenue Code allows a parent corporation to file consolidated income tax

returns with its subsidiaries when the parent owns at least eighty percent of the

subsidiary."  *Id.* (citing 26 U.S.C. § 1501 (1982)).

       Further, Plaintiff failed to establish what an adequate level of capitalization would

be in SFW's line of business, thus, it failed to demonstrate that SFW was

undercapitalized, and the issue of undercapitalization is insufficient to create an issue

for the jury.  *Id.* at 1263.  In any event, SFW was adequately capitalized when the

company was formed in 2006, despite its revenues and profits declining sharply in

2011.  Indeed, the mere fact that SFW may have been suffering from a "cash crunch"

does not support a ruling that ImaginIt abused the corporate privilege and should be held personally liable.  *Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1157 (D. Colo. 1990).  Exercise of limited supervision of or participation in SFW's affairs by ImaginIt does not equate to the domination of day-to-day business decisions that must be shown in order to render ImaginIt an alter ego of SFW.  *See Lowell Staats Min. Co.*, 878 F.2d at 1264 (citing *American Trading & Prod. Corp. v. Fischbach & Moore, Inc.*, 311 F.Supp. 412, 415 (N.D. Ill. 1970)).  ImaginIt did not manage or control the design and fabrication of SFW's solar mounting systems and had nothing to do with the purchase order between SFW and Plaintiff or the decision to keep the deposit. Although ImaginIt owned patents relating to the mounting system and solar technologies, SFW separately developed, branded, marketed, and commercialized its products, developed trade secrets, and obtained trademarks for the design, manufacture, marketing, and sale of its mounting systems.  SFW did not pay ImaginIt's debts and ImaginIt did not pay SFW's debts.  Accordingly, under the circumstances of this case, the Court concludes that Plaintiff has failed to prove by a preponderance of the evidence that SFW is the alter ego of ImaginIt.

**2.    Whether ImaginIt or SFW are the alter egos of Dr. Eiffert**

Plaintiff contends that ImaginIt and SFW are alter egos of Dr. Eiffert and, thus, the Court should pierce the corporate veils of both companies.  Plaintiff supports its contention with the following facts: (1) Dr. Eiffert acted as SFW's President and represented herself to be the Managing Member of SFW in SFW's bankruptcy filings; (2) Dr. Eiffert holds 70% of ImaginIt's stock and Dr. Eiffert's family holds 10% of

ImaginIt's stock; (3) Dr. Eiffert and her sister were officers and directors of ImaginIt; (4) Dr. Eiffert was ImaginIt's registered agent; (5) Dr. Eiffert executed the Statement and Plan of Merger on behalf of ImaginIt as its President and Chief Executive Officer; (6) Dr. Eiffert operated SFW as her or her family's business; and (7) Dr. Eiffert hired her daughter's boyfriend to work at SFW.  Plaintiff also asserts that Dr. Eiffert was the only person involved in the management of SFW and was paid a salary by ImaginIt.

The facts presented by Plaintiff, however, are insufficient to raise a genuine issue of material fact that Dr. Eiffert consistently disregarded the corporate formalities and dominated the affairs of ImaginIt or SFW in a manner that would promote injustice and harm public convenience unless ImaginIt or SFW were held liable for the actions of Dr. Eiffert.  *Geringer v. Wildhorn Ranch, Inc.*, 706 F. Supp. 1442, 1445 (D. Colo. 1988). Indeed, ImaginIt and SFW operated as distinct entities with separate directors and shareholders, maintained their own customers and suppliers, paid taxes, did not comingle their assets with Dr. Eiffert's personal funds, did not pay personal obligations for Dr. Eiffert, and maintained separate corporate and financial records.  ImaginIt's board of directors supervised Dr. Eiffert's business decisions on behalf of ImaginIt and determined her compensation based upon annual performance reviews.  Further, ImaginIt conducted regular shareholder meetings, reported regularly to Colorado and Delaware regulatory authorities, hired and fired its own employees, and separately paid income, employment, and payroll taxes.

In sum, under the circumstances of this case, the Court concludes that Plaintiff has failed to prove by a preponderance of the evidence that SFW is the alter ego of

ImaginIt or that ImaginIt or SFW are the alter egos of Dr. Eiffert. The facts simply do not demonstrate that the corporate form was used to defeat public convenience, or to justify or protect wrong, fraud, or crime. Because the Court has determined that it cannot disregard the corporate entity, the Court need not address the additional requirements in the three-part alter-ego inquiry.

**B.    SUMMARY JUDGMENT MOTION**

Plaintiff contends that, even if the Court finds that it is not appropriate to pierce SFW's corporate veil, its claims against Defendants still stand. Because the Court has found that SFW is not the alter ego of ImaginIt and that ImaginIt is not the alter ego of Dr. Eiffert, ImaginIt cannot be held liable for the conversion or civil theft claims based on conduct of SFW and/or Dr. Eiffert. As such, Plaintiff's claims against ImaginIt are dismissed with prejudice.

However, the Court agrees that Dr. Eiffert, as Chief Executive Officer of SFW, could be held individually liable for Plaintiff's claims of conversion and civil theft, if Plaintiff proves that that she participated in, approved of, sanctioned, or directed the theft or conversion. Nonetheless, the Court determines that genuine issues of material fact preclude the Court from granting Plaintiff's summary judgment motion (Doc. # 75).

## IV.    <u>CONCLUSION</u>

For the reasons provided above, the Court ORDERS that Plaintiff's Motion for Summary Judgment (Doc. # 75) is DENIED. It is

FURTHER ORDERED that Plaintiff's claims based on alter ego against both ImaginIt and Dr. Eiffert are DISMISSED with prejudice. It is

FURTHER ORDERED that all claims against ImaginIt Inc. are DISMISSED with prejudice.  As a result of this ruling, the only counts remaining for trial by a jury are Counts 1 and 2 as against Defendant Patrina Eiffert.

DATED: August 4, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge